# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

  Plaintiff-Appellant,

v

FADY YOHANNA ASSY,

  Defendant-Appellee.

FOR PUBLICATION
July 14, 2016
9:05 a.m.

No. 326274
Wayne Circuit Court
LC No. 2014-010675-01-FH
       2014-010676-01-FH

Before: RIORDAN, P.J., and SAAD and M. J. KELLY, JJ.

PER CURIAM.

In this dispute over the constitutionality of the Tobacco Products Tax Act (the Tobacco Act), MCL 205.421 *et seq.*, the prosecutor appeals by right the circuit court's decision to dismiss the charges against defendant, Fady Yohanna Assy. On appeal, we conclude that the trial court erred when it determined that the Tobacco Act was unconstitutionally vague and overbroad and dismissed the charges against Assy on that basis. Accordingly, we reverse and remand.

## I. BASIC FACTS

Todd Berdan testified that he was a detective with the Michigan State Police Department's tobacco squad. In May 2013, he conducted an administrative tobacco inspection at a business, King's Hookah, located in Dearborn, Michigan. Assy arrived during the inspection and told Berdan that he was the store's manager. Berdan informed Assy that there did not appear to be invoices for more than $250 worth of tobacco. Berdan also asked Assy about the bulk tobacco on the counter and Assy informed him that he makes the bulk stock by combining two or three different flavors of tobacco, which he then sells by weight. Assy agreed to help produce the invoices for the tobacco, but could not produce them. Berdan and the other inspectors inventoried and seized the tobacco. Berdan determined that neither King's Hookah nor Assy had a license to manufacture tobacco products.

Berdan returned to King's Hookah in June 2013 to conduct another inspection. Assy told Berdan that he did the purchasing for the store along with the owner, but stated that the owner had been out of the country. Berdan discovered that some of the stored tobacco was missing the shipping labels from the original manufacturer and others were not supported by the proper invoices. Berdan stated that the amount of tobacco without proper invoices had a wholesale value of more than $250.

-1-

In May 2014, the prosecutor charged Assy with two counts arising from the inspection in May 2013. The prosecutor charged him with possessing, acquiring, transporting, or offering for sale tobacco products other than cigarettes with an aggregate wholesale price of $250 or more without proper invoices and with manufacturing tobacco products without a license. The prosecutor charged Assy in a separate case with one count of possessing, acquiring, transporting, or offering for sale tobacco products other than cigarettes with an aggregate wholesale price of $250 or more without proper invoices arising from the inspection in June 2013.

The district court held a preliminary examination in September 2014. Assy moved to dismiss the charges on various grounds, but the district court determined that the prosecutor presented sufficient evidence to bind Assy over to the circuit court for trial.

In February 2015, Assy moved to dismiss the charges against him in circuit court. The circuit court held a hearing on the motion that same month. During the hearing, the circuit court expressed concern that the Legislature defined a retailer under the statute as someone who operates a place of business for the purpose of making sales of tobacco, but did not clarify what constitutes the operation of a place of business. The court determined, on that basis, that the statute was "vague and over broad" because it could encompass a "seventeen year old selling those cigarettes, and I don't think that was the intent of the legislature whatsoever." Accordingly, the circuit court dismissed the charges against Assy.

The prosecutor now appeals the circuit court's dismissal in this Court.

## II. VAGUE OR OVERBROAD STATUTE

### A. STANDARDS OF REVIEW

The prosecutor argues that the trial court erred when it granted Assy's motion to quash on the ground that the statute was unconstitutionally vague or overbroad. This Court reviews a trial court's decision to grant a motion to quash for an abuse of discretion. *People v McKerchie*, 311 Mich App 465, 470-471; 875 NW2d 749 (2015). This Court reviews de novo whether a trial court correctly determined that a statute is unconstitutional. *IME v DBS*, 306 Mich App 426, 433; 857 NW2d 667 (2014). This Court also reviews de novo whether the trial court properly interpreted the relevant statutory provisions. *McKerchie*, 311 Mich App at 471.

### B. ANALYSIS

In dismissing the charges against Assy, the trial court indicated that the statute was vague and overbroad, but it did not offer an explanation of its reasoning; it merely stated that, as written, the statute could apply to a seventeen-year-old retailer who sells cigarettes. It then asserted—without any analysis—that it did not believe that the Legislature intended the statutory requirements to apply to a seventeen-year-old retailer who sells cigarettes. The trial court does not appear to have determined that the Legislature lacked the authority to enact a statute that requires a seventeen-year-old retailer of tobacco products to maintain the requisite invoices, or lacked the authority to impose a record keeping requirement on any person who participates in

the sale of tobacco products, however minor his or her role might be.[1]  In addition, the statutory scheme plainly does not involve First Amendment freedoms.  See *People v Howell*, 396 Mich 16, 21; 238 NW2d 148 (1976).  For these reasons, it appears that the trial court determined that the statute was unconstitutional because it did not "provide fair notice of the conduct proscribed" or conferred "on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed." *Id.* at 20.

"Vague laws", our Supreme Court has stated, "offend several important values." *Id.* at 20 n 4 (quotation marks and citation omitted).  A vague law "may trap the innocent by not providing fair warning." *Id.* at 20-21 n 4.  Accordingly, courts "insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly." *Id.* at 20 n 4.  Further, the law must "provide explicit standards for those who apply them." *Id.* at 21 n 4.  When a law is vague, there is a danger that the law will be enforced "on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.*  If the Legislature identified the conduct proscribed and provided adequate guidance to avoid the potential for arbitrary and discriminatory application, we must uphold the constitutionality of the Tobacco Act.  See *Bonner v Brighton*, 495 Mich 209, 221; 848 NW2d 380 (2014) (explaining that courts will presume the validity of an act and will only refuse to sustain the act when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates the constitution).

The prosecutor charged Assy with, in relevant part, two counts of possessing tobacco products other than cigarettes without keeping the required documentation at the retail location.[2]  Under the Tobacco Act, every retailer must keep documentation to substantiate the purchase of each tobacco product at his or her retail location:

> A retailer shall keep as part of the records a true copy of all purchase orders, invoices, bills of lading, and other written matter substantiating the purchase or acquisition of each tobacco product at the location where the tobacco product is offered for sale for a period of 4 months from the date of purchase or acquisition. [MCL 205.426(1).]

---

[1] To the extent that the trial court might have determined that the statute does not pass constitutional scrutiny under the rational basis test, it plainly erred.  The statutory scheme does not interfere with any fundamental rights and, given the harmful nature of tobacco products and the possibility of illicit sales, the Legislature could—if it chose—reasonably require a person who participates in the sale of tobacco products in any way to maintain the requisite invoices. See *IME*, 306 Mich App 438-439 (stating that, where a statute does not interfere with fundamental rights, it need only be reasonably related to a legitimate government interest).

[2] The circuit court did not directly address the manufacturing count, but appears to have applied the same reasoning in granting the motion to quash.

Moreover, if "a tobacco product other than cigarettes is found in a place of business or otherwise in the possession of a . . . retailer . . . without proper substantiation by invoices or other records as required by this section, the presumption shall be that the tobacco product is kept in violation of this act." MCL 204.426(6).

This statutory scheme is unambiguous and provides persons with ordinary intelligence reasonable notice of what is prohibited: a retailer is presumed to possess tobacco products other than cigarettes in violation of the act if he or she does not keep documentation capable of substantiating the purchase of each tobacco product at his or her retail location for a period of 4 months from the date of purchase or acquisition. And the possession of "tobacco products other than cigarettes with an aggregate wholesale price of $250.00 or more" contrary to the Tobacco Act is a felony "punishable by a fine of not more than $50,000.00 or imprisonment for not more than 5 years, or both." MCL 205.428(3).

In determining that this statute was vague or overbroad, the trial court apparently determined that the statute was not sufficiently clear to place persons of ordinary intelligence on notice as to who is required to keep the necessary documentation, or did not provide sufficient guidance to those charged with enforcing the law to enable them to ascertain who it is that can be held criminally responsible for possessing tobacco products other than cigarettes without the necessary documentation. A fair reading of the statutory scheme, however, shows that the Legislature provided sufficient guidance to survive such a constitutional challenge.

The Legislature imposed the record keeping requirements on retailers, MCL 205.426(1), and defined the term retailer to mean "a person other than a transportation company who operates a place of business for the purpose of making sales of a tobacco product at retail," MCL 205.422(q). It is undisputed that the store at issue was a place of business for selling tobacco products at retail. Thus, the person or persons who operated the "place of business" had the obligation to maintain the documentation or risk being charged with the possession of tobacco products in contravention of the Tobacco Act.

The trial court worried that the term "retailer," as defined under the statute, could encompass any employee—including a seventeen-year-old cashier—because it was unclear what constitutes operating a business. The Legislature defined the term "person" to include both individuals and legal entities. See MCL 205.422(o). Nevertheless, in ordinary speech, one does not normally refer to a cashier or stocker as the operator of a business. The verb "to operate," when used in its transitive sense, means "[t]o direct the working of; to manage, conduct, work (a railway, business, etc.); to carry out or through, direct to an end (a principle, an undertaking, etc.)." *The Oxford English Dictionary* (2d ed, 1991). When MCL 205.426(1) and MCL 205.422(q) are read together and in the proper context, see *Hayes v Parole Bd*, 312 Mich App 774, 779; ___ NW2d ___ (2015), it is evident that the Legislature intended the term "retailer" to have this more limited meaning; it intended the term to refer to a person who directs or manages the business—to someone who has control over the business' day-to-day operations. Accordingly, we do not share the trial court's concern that the statute might be applied to a variety of low level employees.

-4-

In contrast to the trial court's apparent concern, Assy argues on appeal that the term "operates" necessarily refers to the owner or owners of the store, which in this case is an artificial entity. Although the owner of a business may directly control or manage a business, the owner may also delegate that responsibility to another person or entity. Thus, by defining retailer to mean a person who "operates" the place of business, as opposed to a person who "owns" the business, the Legislature indicated that the person or entity who actually directs or manages the day-to-day operations is the party responsible for ensuring compliance with the Tobacco Act. If a person or entity has control over the day-to-day operations of a "place of business for the purpose of making sales of a tobacco product at retail," that person is a retailer notwithstanding that he or she does not own the place of business. MCL 205.422(q).

The Legislature defined to the term "retailer" with sufficient precision to place persons of ordinary intelligence on notice that the person or persons who direct or manage the operation of a place of business that makes tobacco sales at retail must maintain proper documentation or possibly face criminal charges. Similarly, the statutory scheme is sufficiently definite to preclude arbitrary or discriminatory enforcement. See *People v Hayes*, 421 Mich 271, 284, 286; 364 NW2d 635 (1984). Therefore, the trial court erred when it determined that the statutory scheme was unconstitutionally vague or overbroad.[3]

On appeal, Assy discusses the definition of "sale at retail" from the Sales Tax Act, MCL 205.51 *et seq.*, when interpreting the term "retailer." However, the authorities he cites are inapposite because the term retailer was not defined in the Sales Tax Act. We similarly reject his contention that, because MCL 205.27a only imposes the duty to maintain corporate tax and accounting records on officers, MCL 205.426(1) cannot be understood to impose criminal liability on persons other than officers for failing to keep business records. MCL 205.426(1) plainly imposes a duty on persons who operate the place of business and not just officers.

## III. CONCLUSION

The trial court erred as a matter of law when it determined that MCL 205.426(1) was unconstitutional. Consequently, it necessarily abused its discretion when it granted Assy's motion to quash the charges on the basis of this error of law. *McKerchie*, 311 Mich App at 471.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Henry William Saad
/s/ Michael J. Kelly

---

[3] Assy moved to dismiss the charges on other grounds as well. However, because the trial court only addressed whether the statute at issue was unconstitutionally vague or overbroad, we have limited our analysis accordingly. Whether there are alternate bases for dismissing the charges should be addressed by the trial court on remand, if necessary.